IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **HEATHER LEE MINOR,** individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**HEALTHMARKETS INSURANCE AGENCY, INC.,** a Texas corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Heather Lee Minor ("Minor" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant HealthMarkets Insurance Agency, Inc. ("HealthMarkets" or "Defendant") to stop HealthMarkets from violating the Telephone Consumer Protection Act by placing unwanted solicitation calls, sending unsolicited, autodialed text messages to consumers without their consent, including calls and texts to consumers registered on the National Do Not Call registry (DNC), and to otherwise obtain injunctive and monetary relief for all persons injured by HealthMarkets' conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## INTRODUCTION

1. HealthMarkets provides health insurance for individuals, families, and small businesses.

2. HealthMarkets provides its agents with leads, which the agents then solicit in order to sell Healthmarkets' insurance packages.

3. Agents are instructed to engage in cold calling in order to generate insurance sales.

4. However, HealthMarkets agents are calling and texting consumers using an autodialer without obtaining the necessary prior written consent that is required for these communications. To make matters worse, HealthMarkets is also contacting consumers that have their phone numbers registered with the DNC.

5. In Plaintiff's case, HealthMarkets agents sent multiple autodialed text messages to her cellular phone despite Plaintiff having her phone number registered with the DNC to avoid such solicitation attempts.

6. In response to these text messages solicitations, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease from sending unsolicited text messages to consumers' cellular telephone numbers using an autodialer, and otherwise text messaging consumers registered on the DNC, as well as an award of statutory damages to the members of the Classes.

**PARTIES**

7. Plaintiff Minor is a Tallahassee, Florida resident.

8. Defendant HealthMarkets is a Texas corporation headquartered in North Richland Hills, Texas. Defendant conducts business throughout this District, the State of Florida, and throughout the United States.

**JURISDICTION AND VENUE**

9. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). The Court has supplemental jurisdiction over the Florida Telephone

Solicitation Act ("FTSA") claims because they arise from the same calling campaign as the TCPA claim.

10. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District.

## COMMON ALLEGATIONS

**HealthMarkets is Responsible for the Telemarketing Text Messages Placed by Its Agents**

11. HealthMarkets provides its agents with 3 things that are critical to the sale of HealthMarkets' insurance packages: training, technology and leads.

**Training:**

12. HealthMarkets provides a full training program that is designed to prepare agents to make sales.[1]

13. It provides agents with access to HealthMarkets University where agents learn business plan development, receive instructor-led training and receive ongoing coaching and mentorship.[2]

14. The training teaches agents how to place cold calls and text messages to consumers.

15. HealthMarkets even provides its insurance agents with call scripts that should be used in order to solicit business from consumers.[3]

16. Defendant's agent described their typical day as consisting of "75+ cold calls/leads."[4]

**Technology:**

---

[1] https://www.healthmarketscareers.com/insurance-agent-resources-and-tools/insurance-agent-training/ (last visited Sept. 16, 2022).
[2] *Id.*
[3] https://five9.healthmarkets.com/NewIBU65Script2.html (last visited Sept. 16, 2022).
[4] https://www.indeed.com/cmp/Healthmarkets/reviews?fcountry=US&ftopic=paybenefits&ftext=75%2B+cold+calls%2Fleads# (last visited Sept. 18, 2022).

17. HealthMarkets agents are provided with access to the Five9 autodialer.[5]

18. The autodialer works by loading in a list of contacts that should be called. Once the dialer is started, it automatically calls the next lead without human intervention, once an agent selects a disposition (status of the lead):



19. Certain dispositions that the agent sets in the dialer will trigger additional phone calls to be made to the consumer at a later date, or time.

20. For example, if the agent selects "Left Message", Five9 will automatically schedule another call 48-hours later:

---

[5] https://slideplayer.com/slide/4013219/ (last visited Sept. 16, 2022).
[6] *Id.* (slide 3).



Similarly, selecting "No Message Left" will automatically schedule a second call 2 hours later in the day.

**Leads:**

21. In addition to encouraging its agents to generate leads through general cold calling, HealthMarkets provides agents with its own leads to cold call.

22. There are numerous complaints posted online about the leads that HealthMarkets provides, such as:

- "Customer Leads are a joke."[8]

- "bad leads."[9]

- "No good leads"[10]

- "New Producers were given Leads that were already worked over, and by several people many times."[11]

---

[7] *Id*. (slide 24).
[8] https://www.indeed.com/cmp/Healthmarkets/reviews?fcountry=US&ftopic=paybenefits&ftext=Customer+Leads+are+a+joke.# (last visited Sept. 18, 2022)
[9] *Id*.
[10] https://www.indeed.com/cmp/Healthmarkets/reviews?fcountry=US&ftopic=paybenefits&ftext=no+good+leads# (last visited Sept. 18, 2022)
[11] https://www.indeed.com/cmp/Healthmarkets/reviews?fcountry=US&ftopic=paybenefits&ftext=new+producers+were+given+leads (last visited Sept. 18, 2022)

- "Paid for my leads and were always useless old leads."[12]

23. As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012) (emphasis added).

24. Yet in violation of this rule, Defendant fails to obtain any express written consent prior to sending autodialed solicitation text messages to cellular telephone numbers such as Plaintiff's.

25. HealthMarkets agents are trained to send text messages to consumers, oftentimes using leads that were provided by HealthMarkets itself.

## PLAINTIFF'S ALLEGATIONS

**Plaintiff Received Unwanted Autodialed Text Messages to Her Cell Phone Number, Despite Plaintiff Registering Her Phone Number on the DNC.**

26. On March 4, 2022, Plaintiff registered her cellular telephone number on the DNC in order to avoid receiving unsolicited calls and text messages.

27. Plaintiff uses her cellular phone for personal use only. Plaintiff's cellular phone number is not associated with a business.

28. On April 11, 2022, at 11:46 a.m., Plaintiff received a text message from the shortcode 69349: "Melvin, You Could Still Find Health Coverage For 2022. Enroll by April 15 For Coverage Starting May 1. Call (855) 975-0114 Rply STOP to stop."[13]

29. On April 20, 2022, at 2:20 p.m., Plaintiff received another text message from

---

[12] https://www.indeed.com/cmp/Healthmarkets/reviews?fcountry=US&ftopic=paybenefits&ftext=useless+old+leads (last visited Sept. 18, 2022)
[13] When 855-975-0114 is called back, a prerecorded operator states: "Thank you for calling Healthmarkets."

69349, which stated "Melvin, Lock-In Your 2022 Health Plan Before April Ends. Review Your Options With a Licensed Agent Now: (888) 928-2955 Rply STOP to stop."[14]

30. On June 1, 2022, at 7:43 p.m., Plaintiff received another text message from 69349, which stated "Melvin, Lock_in Your 2022 Health Coverage As Soon As July 1st. Call (877) 728-2347 To Compare Options Rply STOP to stop." [15]

31. On June 1, 2022, at 12:41 p.m., Plaintiff received another text message from 69349, which stated "Damien, Lock-In Your 2022 Health Coverage As Soon As July 1st. Call (866) 537-2017 To Compare Options Rply STOP to stop." [16]

32. On June 15, 2022, Plaintiff received another text message from 69349 stating "June 15. Call A Licensed Agent Now (866) 478-3715 Reply STOP to optout Rply STOP to stop."

33. On June 21, 2022, Plaintiff responded Stop and immediately received an opt-out confirmation text message that read, "You have unsubscribed from Apollo Alters and will no longer receive messages. Reply HELP for help or contract www.apollointeractive.com."

34. None of the text messages specifically identify who is sending the text messages.

35. Plaintiff does not have a relationship with HealthMarkets or any of its affiliated companies, nor has she ever requested that HealthMarkets call her or consented to any contact from Defendant.

36. Simply put, HealthMarkets did not obtain Plaintiff's prior express written consent to call and send solicitation text messages to her cellular telephone using an autodialer.

---

[14] When 888-928-2955 is called back, a generic prerecorded operator answers and then eventually a prerecorded message states: "Thank you for calling Healthmarkets."
[15] When 877-728-2347 is called back, a generic prerecorded operator answers and then eventually a prerecorded message states: "Thank you for calling Healthmarkets."
[16] When 866-537-2017 is called back, a generic prerecorded operator answers and then eventually a prerecorded message states: "Thank you for calling Healthmarkets." Later, a live agent answers, who identifies herself as working for Healthmarkets.

37.     The unauthorized calls and text messages sent by HealthMarkets, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed her use and enjoyment of her phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

38.     Seeking redress for these injuries, Minor, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls and text messages to cellular telephones and unsolicited calls and text messages to telephone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's Claims
### Arising From Calls and Texts Sent by HealthMarkets Agents

39.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of the following Classes:

> **Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called and/or texted more than one time within any 12 month period, (2) on the person's residential telephone number, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called and/or texted Plaintiff.
>
> **Florida Autodialed No Consent Class:** All persons in Florida who (1) were sent a telephonic sales call by or on behalf of the Defendant soliciting goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff, (3) on or after July 1, 2021.
>
> **Florida Unidentified Telephone Solicitor Class:** All persons in Florida who (1) received an unsolicited telephonic sales call from or on behalf of the Defendant, (2) in which the sender failed to identify their full name and the business on whose behalf the solicitation call was made, (3) on or after July 1, 2021.

40.     The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

41. **Numerosity**: On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not necessarily limited to the following:

   (a) whether Defendant systematically sent text messages to Plaintiff and consumers whose telephone numbers were registered with the National Do Not Call registry;

   (b) whether Defendant utilized an automatic telephone dialing system to send text messages to Plaintiff and the members of the Florida Autodialed No Consent Class;

   (c) whether Defendant sent autodialed text messages to Plaintiff and members of the Florida Autodialed No Consent Class without first obtaining prior express written consent to send the texts and/or make the calls;

   (d) whether Defendant's conduct constitutes a violation of the TCPA and FTSA;

   (e) whether Defendant's text messages to the Florida Unidentified Telephone Solicitor Class were sent without identifying themselves in the text messages;

   (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

43. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to the Classes.

44. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiffs. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Minor and the Do Not Call Registry Class)**

45. Plaintiff repeats and realleges paragraphs 1 through 44 of this Complaint and incorporates them by reference herein.

46. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o

person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

47. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[17]

48. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

49. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone call and/or text message solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

50. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call and/or text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $1,500 in damages for such violations of 47 C.F.R. § 64.1200.

---

[17] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf (last visited Sept. 16, 2022).

## SECOND CAUSE OF ACTION
### Violation of the Florida Telephone Solicitation Act Fla. Stat. § 501.059
### (On Behalf of Plaintiff and the Florida Autodialed No Consent Class)

51. Plaintiff repeats and realleges paragraphs 1 through 44 of this Complaint and incorporates them by reference.

52. Plaintiff brings this claim individually and on behalf of the Florida Autodialed No Consent Class Members against the Defendant.

53. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

54. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

55. Defendant failed to secure prior express written consent from Plaintiff and members of the Florida Autodialed No Consent Class.

56. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Florida Autodialed No Consent Class members without Plaintiff's and the Class members' prior express written consent.

57. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

58. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id*.

**THIRD CAUSE OF ACTION**
Violation of the Florida Telephone Solicitation Act
Fla. Stat. § 501.059
(On Behalf of Plaintiff Minor and the Florida Unidentified Telephone Solicitor Class)

59. Plaintiff repeats and realleges paragraphs 1 through 44 of this Complaint and incorporates them by reference.

60. Plaintiff brings this claim individually and on behalf of the members of the Florida Unidentified Telephone Solicitor Class against Defendant.

61. The FTSA requires "[a]ny telephone solicitor who makes an unsolicited telephonic sales call to a residential, mobile, or telephonic paging device telephone number" to mandatorily "identify himself or herself by his or her true first and last names and the business on whose behalf he or she is soliciting immediately upon making contact by telephone with the person who is the object of the telephone solicitation." Fla. Stat. § 501.059(2).

62. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

63. In violation of the FTSA, Defendant failed to identify the name of the telephone solicitor or the business on whose behalf those unsolicited telephonic sales calls were made and/or caused to be made to Plaintiff and other members of the Florida Unidentified Telephone Solicitor

Class.

64. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of actual and/or statutory damages to be paid into a common fund for the benefit of Plaintiff and the Classes;

c) An order declaring that Defendant's actions, as set out above, violated the TCPA and FTSA;

d) A declaratory judgment that Defendant's text messaging equipment constitutes an automatic telephone dialing system under the FTSA;

e) An injunction requiring Defendant to cease all unsolicited texting activity and to otherwise protect the interests of the Classes; and

f) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**HEATHER LEE MINOR**, individually and on behalf of those similarly situated individuals

Dated: September 19, 2022		By: /s/ *Stefan Coleman*
Stefan Coleman
COLEMAN PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
(877)333-9427
law@stefancoleman.com

Katherine Hendler Fayne*
State Bar No. 24036752
katherine@katherinefaynelaw.com
KATHERINE FAYNE LAW PLLC
6301 Gaston Avenue, Suite 1128
Dallas, TX 75214
Telephone: (214) 770-1322
*Local counsel

Avi R. Kaufman**
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

**Pro Hac Vice motion forthcoming*